CASE NO. 12-7055

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

JOSEPH FARAH, JEROME CORSI,
WORLDNETDAILY.COM AND WND BOOKS
Plaintiffs-Appellants,
v.
ESQUIRE MAGAZINE, INC., HEARST COMMUNICATIONS, INC.,
AND MARK WARREN
Defendants-Appellees.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APPELLANTS' PETITION FOR REHEARING AND
REHEARING EN BANC

---

Larry Klayman, Esq.
KLAYMAN LAW FIRM
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Attorney for Appellants

# APPELLANT'S CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Appellants hereby certifies pursuant to Circuit Rule 28(a)(1) that:

**A. Parties and Amici**

The parties that appeared in the district court are Plaintiffs Jerome Corsi, Joseph Farah, Worldnetdaily.com, and WND Books and Defendants Esquire Magazine, Mark Warren, and Hearst Communications.

**B. Rulings Under Review**

The rulings under review are the final Memorandum Opinion and Order and Final Judgment of the district court entered on June 4, 2013 (Docket Nos. 20, 21), which granted Defendants' Motion to Dismiss, dismissed all claims, and entered Judgment for Defendants; and all other orders and rulings adverse to Plaintiff in this case.

**C. Related Cases**

Appellant is not aware of any related cases.

## RULE 35(b)(1) STATEMENT

This proceeding involves one or more questions of exceptional importance including (1) the limitations of parody and satire in protecting defamatory and/or false light statements that are intended simply to harm the author and publisher of a competing commercial product.

INTRODUCTION

This is not a case about whether or not President Barack Obama was born within the United States or otherwise a natural born citizen as required by the U.S. Constitution to be eligible to be president, but rather whether Appellants, Joseph Farah, Dr. Jerome Corsi ("Corsi"), Worldnetdaily.com (now known as WND.com), and WND Books were defamed and/or held in a false light by virtue of Appellee Esquire Magazine, Mark Warren, and Hearst Communications representations published on Esquire's website on May 18, 2011. This publication followed up with disparaging and misleading remarks calling Appellant Corsi an "execrable piece of shit" on the website of the Daily Caller and were disseminated in this district, throughout the nation, and the world. The bottom line is this, when these publications were made, there was no indication on Appellee Mark Warren's posting entitled "BREAKING: Jerome Corsi's Birther Book Pulled From Shelves!" in "The Politics Blog" section of the esquire.com website (hereafter, referred to as the "Blog Post") that this was parody, protected by free speech under the First Amendment to the U.S. Constitution. Moreover, even if it was alleged that regular readers of Esquire's blog could discern, however loosely, that the representations were parody, before the district court dismissed the case improperly there had been no discovery to even come to this conclusion. And, undoubtedly, there were first time or recent viewers of the blog who did not know

that the publications were parody, particularly since in today's age website publications are instantly republished on the internet in many different fora. That occurred here.

The opinion written by the Honorable Judith Rogers strains to find the published statements at issue to be parody. She had no legal right to do so, since these statements were on their face capable of different interpretations. In this regard, it is black letter case law that when an alleged defamatory and/or false light statement is capable of different meanings, that the statements must be given to a jury to decide. This is why we have a jury system and why judges are not to impose their will upon litigants under such circumstances. Our Founding Fathers were well aware that judges are appointed and confirmed by politicians and wanted to keep politics out of decision-making wherever possible. The issue of whether President Obama is eligible for his office is a highly charged political issue that riles Democrats and Democrat-appointees in particular. Is it just coincidence that Judge Rogers, appointed to the bench by a Democrat president, in effect cuts off Appellants' rights to have this issue decided by a jury by issuing a dispositive order?

Appellants cast no aspersions upon Judge Rogers for malevolent intent. However, it is human nature to see matters such as this through one's political prism and ideology. The debate over President Obama's eligibility -- which is not

really at issue here in substance -- is a hot potato even for Republicans since some of their prospective presidential candidates such as Senators Marco Rubio and Ted Cruz do not qualify as natural born citizens either.[1]

In short, the three judge panel (apparently Judge Williams did not agree with Judge Rogers as he did join in and sign the opinion) improperly affirmed the district court's dismissal cutting off Appellants' due process rights before a jury of their peers, much less their discovery rights leading up to trial.[2]

As a result, this case should be reheard *en banc* to preserve Appellants' constitutional rights and to have the district court decision reversed.

## THE FACTS

Appellant Dr. Jerome Corsi published his book, *Where's the Birth Certificate? The Case that Barack Obama is not Eligible to be President,* on May 17, 2011. (JA 11). The book was published by Appellant WND Books, a subsidiary of worldnetdaily.com. Appellant Joseph Farah is the founder of World

---

[1] "Natural born citizen" is defined as a person born in the United States to two U.S. citizen parents. *Minor v. Happersett*, 88 U.S. 162 (1875).

[2] The En Banc panel is respectfully requested to obtain the audio of Appellants' Oral Argument before this Court on October 3, 2013 as the comments and questions of two of the judges, the Honorable Janice Rogers Brown and the Honorable Stephen F. Williams, seem to support the arguments of Appellants in this brief. They may be helpful to the En Banc panel in conducting its review.

Net Daily and is the editor and chief executive officer of both the website and the publishing firm. (JA 9).

The very next day, on May 18, 2011, esquire.com published an article, by Appellee Mark Warren, entitled "BREAKING: Jerome Corsi's Birther Book Pulled From Shelves!" in "The Politics Blog" section of the esquire.com website (JA 11). The Blog Post read in its entirety:

> **In a stunning development** one day after the release of *Where's the Birth Certificate? The Case that Barack Obama is not Eligible to be President*, by Dr. Jerome Corsi, World Net Daily Editor and Chief Executive Officer Joseph Farah has announced plans to recall and pulp the entire 200,000 first printing run of the book, as well as announcing an order to refund the purchase price to anyone who has already bought either a hard copy or electronic download of the book. In an exclusive interview, a reflective Farah, who wrote the book's forward and also published Corsi's earlier best-selling work, *Unfit for Command: Swift Boat Veterans Speak out Against John Kerry* and *Capricorn One: NASA, JFK, and the Great "Moon Landing" Cover-Up*, said that after much serious reflection, he could not go forward with the project. "I believe with all my heart that Barack Obama is destroying this country, and I will continue to stand against his administration at every turn, but in light of recent events, this book has become problematic, and contains what I now believe to be factual inaccuracies," he said this morning. "I cannot in good conscience publish it and expect anyone to believe it."
>
> When asked if he had any plans to publish a corrected version of the book, he said cryptically, "There is no book." Farah declined to comment on his discussions of the matter with Corsi. A source at WND, who requested that his name be withheld, said that Farah was "rip-shit" when, on April 27, President Obama took the extraordinary step of personally releasing his "long-form" birth certificate, thus resolving the matter of Obama's legitimacy for "anybody with a brain." "He called up Corsi and really tore him a new one," says the source. "I mean, we'll do anything to hurt Obama, and erase his memory, but we don't want to look like f___ing idiots, you know?

4

> Look, at the end of the day, bullshit is bullshit." Corsi, who graduated from Harvard and is a professional journalist, could not be reached for comment.

*Id.* (boldface and italics in original). Esquire readers quickly started linking the Blog Post on Twitter.com, a social networking site used by millions throughout the United States and worldwide. An hour and a half later, Esquire, admitting that many of its readers did not see the Blog Post was, as they falsely claimed ex post facto "satire," added an "update" which stated the following:

> **UPDATE, 12:25 p.m.**, *for those who didn't figure it out yet, and the many on Twitter for whom it took a while*: We committed satire this morning to point out the problems with selling and marketing a book that has had its core premise and reason to exist gutted by the news cycle, several weeks in advance of publication. Are its author and publisher chastened? Well, no. They double down, and accuse the President of the United States of perpetrating a fraud on the world by having released a forged birth certificate. Not because this claim is in any way based on reality, but to hold their terribly gullible audience captive to their lies, and to sell books. This is despicable, and deserves only ridicule. That's why we committed satire in the matter of the Corsi book. Hell, even the president has a sense of humor about it all. Some more serious reporting from us on this whole "birther" phenomenon here, here, and here.

(JA 11) (boldface and italics in original).

After alleging that Appellants' book contained inaccuracies, Appellees also falsely stated that Appellants were planning to recall and pulp the entire 200,000 first print run of their book. (JA 11). More damaging is Appellees' false statements that Appellants were taking such actions because Appellants acknowledged the inaccuracies of their book. *Id*. In falsely and inappropriately misusing Appellants'

5

names, Appellees also falsely attributed statements to Appellant, claiming that Appellant Farah had confirmed the book "contains what I now believe to be factual inaccuracies…I cannot in good conscience publish it and believe it." *Id.* This manufactured alleged quote is false, as Appellants continue to remain steadfast in their belief of the book's propositions.

The *Daily Caller* contacted Appellee Mark Warren about an hour later seeking a comment about the Blog Post. Mr. Warren offensively referred to Dr. Corsi as "**an execrable piece of shit**" and that Appellees had **"no regrets"** in their publication. (JA 13) Defs. Mem. in Suppt. of Mot. to Dismiss, Ex. A ("Findikyan Decl."), Ex. 28 (JA 260) (dailycaller.com post May 18, 2011 at 12:06 p.m.) ("The Esquire story, written by Mark Warren, spread across the Internet moments after being posted on the magazine's website Wednesday morning. Esquire has said it was a joke and Warren told [the *Daily Caller*] he has no regrets about posting it."). The *Daily Caller* also contacted Mr. Farah, who told the *Daily Caller* that he had never spoken to anyone from Esquire and "[n]ever uttered these words or anything remotely resembling them to anyone. It is a complete fabrication. The book is selling briskly. I am 100 percent behind it." *Id.*

Yet Appellants' book suffered considerable harm as a result of Appellees' Blog Post. (JA 12, JA 14). Booksellers removed Appellants' books from their shelves and some even refused to sell the books at all. (JA 14). Appellants' book

6

had risen to the top of the Amazon.com bestseller's list and was performing well until the Blog Post discredited both the book and Appellant Corsi. Potential customers no longer viewed the book as credible, and even some who had already purchased the book were asking for their money back as a result of the Blog Post.

Appellants thus filed their Complaint in the district court, seeking to recover under the Lanham Act, as well as common law defamation, false light invasion of privacy, and tortious interference. The entirety of the Complaint was improperly dismissed by the Honorable Rosemary Collyer, leading to this appeal.

On June 4, 2012 Judge Collyer issued a Memorandum Opinion and Order granting Appellees' Motion to Dismiss and dismissing the case with prejudice. On November 26, 2013 the three judge panel of Judges Rogers and Brown (Williams not participating) affirmed the district court's ruling.

## THE LAW

### The Blog Post Could Have Reasonably Been Understood As Defamatory and it Was for a Jury to Decide Whether It was Defamatory or Not.

"In a case of parody or satire, courts must analyze the words at issue with detachment and dispassion, considering them in context and as a whole, as the reasonable reader would consider them." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 158 (Tex. 2004). "If it appears that the statements are at least capable of a defamatory meaning, whether they were defamatory and false are questions of fact to be resolved by the jury." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C.

7

1990) (citing *Olinger v. American Sav. & Loan Ass'n*, 133 U.S. App. D.C. 107, 109, 409 F.2d 142, 144 (1969) (per curiam).

When a plaintiff requests a jury trial, it is not generally for the district court to decide whether a statement is defamatory or not. "It is only when the court can say that the publication is not reasonably capable of *any* defamatory meaning and cannot be reasonably understood in *any* defamatory sense that it can rule as a matter of law, that it was not libelous." *Levy v. American Mut. Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964) (Emphasis added); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). "**[I]f the language is capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two meanings would be attributed to it by persons of ordinary understanding under the circumstances.**" *Levy*, 196 A.2d at 476 (Emphasis added). "[A] jury must determine whether these impressions were actually conveyed, whether they were false, and whether the letters were motivated by actual malice." *White*, 909 F.2d at 525; *see also Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446, 449 (3d Cir. 1987) ("if the language at issue is "capable of both a defamatory and a nondefamatory meaning, there exists a question of fact for the jury.").

In this case, Appellants were bombarded with emails and phone calls questioning the authenticity of the Blog Post. Even Appellee Esquire recognized that there were so many people who believed the Blog Post that they were forced

8

to add a disclaimer saying that the posting was "satire." It was clear this was done simply as an afterthought, and the damage had already been done. In the age of the internet, news spreads like a wildfire, from one source to another. Simply adding a disclaimer over an hour and a half later does not take away from the damage that was done within even a few minutes, by the spreading of the Blog Post on sites such as Twitter.com and other such social media websites. Appellees were worried that they would be held liable for defaming Appellants, because they had.

It was error for Judge Rogers to simply decide that there is no way a reasonable person could see this Blog Post as defamatory and to dismiss the case without discovery and a trial. Thousands of people had already seen the Blog Post and concluded there was nothing satirical about it.

The alleged defamation at issue is **libel per se** since Appellees falsely claim that Appellants have committed a crime in their trade and profession by commercially defrauding the American public. *See generally Raboya v. Shrybman & Associates,* 777 F.Supp 58 (D.D.C. 1991). Thus, Appellants need not have made a showing of either maliciousness or negligence.

Nevertheless, the Appellees did act with actual malice and sought to harm both the reputations of Appellants, and their pocketbooks. WND is a commercial competitor of Esquire. Both websites attract viewers from all over the country and all sorts of political viewpoints. Appellee Esquire's "attack" on WND, Joseph

9

Farah, and Dr. Corsi, would undermine the credibility of their competitor and thus destroy their competitor's viewership and income. Indeed, this outcome did occur. As pleaded in the Complaint, Appellants were approached by many seeking the "refund" that the Blog Post had promised. Sales of the book were similarly hurt by the Blog Post, and never recovered.

Even more evidence of actual malice, Appellee Warren offensively referred to Appellant Corsi as "**an execrable piece of shit**" and that Appellees had "no regrets" in their publication. Compl. ¶15 (JA 14). These words demonstrate the animosity held by Appellee Warren toward Appellant Corsi, and the malicious intent of the comments made about him and the other Appellants. Discovery will further uncover the maliciousness and motivation behind the Blog Post. It is a clear indication that the defamatory Blog Post did what it was maliciously intended to do. It unjustifiably hurt both the reputation and the sales of Appellants.

Judge Rogers cited to Mr. Farah's statements. Mr. Farah told the *Daily Caller,* sarcastically to show his incredulousness, that it was; "assume[d] it [was] a very poorly executed parody," **meaning it was not parody at all!**

<u>The Lanham Act is Applicable</u>

Judge Rogers improperly held that the Lanham Act only applies to commercial speech and thus, does not apply to this case. Not only was the speech here largely commercial, many courts have held the contrary and have applied the

10

Lanham Act to cases involving non-commercial speech. See *PAM Media, Inc. v. American Research Corp.*, 889 F.Supp.1403 (D. Colo. 1995) (holding that genuine issue of material fact as to whether the name "After the Rush" for a show named "The Rush Limbaugh Show" precluded summary judgment of Lanham Act action).

## CONCLUSION

As our Founding Father John Adams envisioned, we are "[a] Government of laws and not of men."  This Court should respectfully disregard the fact that the eligibility of President Obama is at issue and simply focus on the merits of this lawsuit.

Because Appellees' statements could have had a defamatory effect, it was only proper for a jury to decide whether it was defamatory or not, and it was not the role of the district court or this Court to make that determination. Further, it was error for this Court to decide that the Lanham Act did not apply.  For these reasons, Appellants respectfully request that this case should be reheard *en banc* to preserve Appellants' constitutional rights and the district court decision reversed.

                              Respectfully submitted,

                              /s/ *Larry Klayman*
                              Larry Klayman, Esq.
                              Attorney at Law
                              D.C. Bar No. 334581
                              2020 Pennsylvania Ave. NW, Suite 345
                              Washington, DC 20006
                              Tel: (310) 595-0800
                              Email: leklayman@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of December, 2013 a true and correct copy of the foregoing Petition for Rehearing and Rehearing En Banc (No. 12-7055) was filed electronically via CM/ECF to the United States Court of Appeal for the District of Columbia Circuit and served via CM/ECF upon the following:

Laura Rose Handman
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006-3401
laurahandman@dwt.com

Jonathan R. Donnellan
THE HEARST CORPORATION
300 West 57th Street
40th Floor
New York, NY 10019
jdonnellan@hearst.com

John Rory Eastburg
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006-3401
roryeastburg@dwt.com

Kristina Elizabeth Findikyan
THE HEARST CORPORATION
300 West 57th Street
40th Floor
New York, NY 10019
kfinikyan@hearst.com

Respectfully Submitted,

 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com